GEORGE H. NISSEN v. JOHN T. CRAMER.

*Libel — Slander — Privileged  Declarations — Malice — Evidence — Burden of Proof.*

1. The principle which absolutely exempts witnesses, counsel and a party who conducts his cause in person, from liability in actions for libel and slander, for whatever they may say, in the course of a judicial proceeding relevant or pertinent to the matter before the Court, will protect a party who, at the time of the alleged slanderous utterances is represented by counsel, and embraces, also, an agent who represents his principal in the proceeding.

2. A person who files a sworn information before a judicial officer, charging another with having committed a crime, is also absolutely protected as to all relevant statements in his affidavit, but where he lodges his charge verbally, with an expressed purpose, never executed, of filing a formal information, he is presumptively protected, and the burden is on one suing him for slander to establish actual malice.

While an action between Geo. H. Nissen (the plaintiff in this action) and the Genesee Gold Mining Company was being tried  before the Hon. J. H. Dillard as a referee under an order of the Superior Court of Davidson County, the plaintiff therein, during his examination as a witness, testified that John T. Cramer, the agent of the Genesee Gold Mining Company, " wanted me to give him $500 for giving me the contract"—referring to a disputed item of $500, which was a material issue in the case.   Cramer was present, acting as the agent of the Genesee Gold Mining Company, and assisting its counsel in the management of the defence.   When the plaintiff made the declaration set forth above, Cramer, in an audible voice, easily heard throughout the apartment by a number of persons therein, said, " That's a lie."

The plaintiff thereupon brought this action, alleging that the defendant intended, and did thereby falsely and maliciously charge him with the crime of perjury.

The defendant admitted the speaking of the words, but said they were uttered in a low tone, were not addressed to any one, and were not spoken with intent to injure plaintiff, or charge him with perjury.

On the trial, the plaintiff offered testimony tending to show malice on the part of the defendant, and among other matters, with that view, proposed to introduce a letter written by defendant to Messrs. Talbott & Sons, of Richmond, Va., in which he spoke of the plaintiff's purpose to "beat" and swindle his principal—the Genesee Gold Mining Company.

The Court excluded the letter on the ground of its immateriality.

To the charge of his Honor, which is set out in the opinion of Court, the plaintiff excepted.

Verdict and judgment for defendant. Plaintiff appealed.

*Messrs. L. M. Scott* and *W. S. Ball*, for the plaintiff.
*Messrs. M. H. Pinnix* and *F. C. Robbins*, for the defendant.

AVERY, J.: The plaintiff's exceptions raise the question whether the defendant, representing a corporation as agent, at a trial before a referee, is protected in saying of the testimony of plaintiff, who had been examined as a witness, "That's a lie," when counsel was present, also appearing for the corporation, and whether, under the admitted circumstances, the privilege, if it existed at all, was absolutely, or only *prima facie* a protection, for if there was only a presumption of good faith the plaintiff might rebut it by showing the existence of actual malice when the language was used.

Chief Justice RUFFIN, in *Briggs* v. *Byrd,* 12 Ired., 380, says, that the phrase "privileged communication," means words "uttered in a legal proceeding, or on some other occasion of apparent duty, which *prima facie* imports that the party was actuated by a sense of duty, and not by malice, which is generally to be implied from speaking words imputing a crime to another."

It was conceded on the argument, and, at all events, it is settled law, that one who appears in person on his own behalf, or on behalf of another, or counsel representing a party on the trial of an action, may say, in the progress of the trial, anything in reference to the character or conduct of the opposing party, or witnesses, that is relevant and pertinent to the question or issue before the Court or jury, without incurring any liability whatever in an action for slander, predicated upon the language used. The occasion gives absolute protection, if the utterances are not irrelevant. *State* v. *Leigh,* 3 Dev., 127; *Shelfer* v. *Gooding,* 2 Jones, 175; Townsend on S. &. L., § 224; *Ring* v. *Wheeler,* 7 Cowen, 731; *Jennings* v. *Power,* 4 Wis., 372; *Lester* v. *Thurman,* 51 Ga., 118.

The inference of malice is not drawn, as a matter of law, when irrelevant words are written or spoken by parties or counsel in the due course of judicial proceedings, and such words "are not actionable, unless it affirmatively appear that they were malicious and without reasonable or probable cause." *Lawson* v. *Hicks,* 38 Ala., 279.

In *Briggs* v. *Byrd, supra,* this Court held, that there was a presumption of good faith in favor of one who made a verbal charge of larceny to a Justice of the Peace against another, with the expressed purpose, not afterwards carried out, of filing a formal affidavit embodying the charge, and that in an action for slander, founded upon the statement to the Justice, the plaintiff must prove the existence of malice when the words were uttered. On the other hand, it

is a well established rule that when one actually lodges information before a judicial officer that he is informed that another has committed a felony, or infamous offence, the informer is absolutely protected against an action for slander based upon his affidavit, and a person claiming to have sustained injury has no remedy, unless the facts will enable him to maintain an action for malicious prosecution. *Holmes* v. *Johnson*, Busbee's L., 44; *Flint* v. *Pike*, 10 Cow. L. Rep., 380; *Hastings* v. *Lash*, 22 Wen. Rep., 310. Both parties and witnesses are protected in civil tribunals against accountability in actions for slander for anything contained in the pleadings, affidavits, or depositions filed in the record, or testimony given on the trial, that are pertinent to the questions or issues arising in the action. Townsend on S. & L., §§ 221 to 224; *Lea* v. *White*, 4 Sneed, 111.

It follows from the principles that we have stated, that if the defendant had the same privileges when his counsel were present with him before the referee, that the law accorded to him when appearing in his own behalf, no action would be maintained against him for the language used in reference to the plaintiff. In the case of *Badgely* v. *Hidges*, 1 Penn. (N. J.) Rep., 233, the Court said (when the very same words were uttered of a plaintiff, who had just testified, by a defendant conducting his own defence): "This judgment cannot be sustained. It is abundantly evident from the record that the words spoken in these first counts were spoken in a Court of law, in the progress of a trial, and in the course of justice; that the language *was uncivil and merited the censure* of the Justice before whom the testimony was given is very clear, but it is not actionable. Nothing is more common than for a *party to say in his defence, that the evidence given against him is not true, and that he can prove it.*" This case, decided over eighty years ago, has been cited and recognized as authority since the opinion was

104—37

rendered. Townsend on S. & L., § 224. There can be no doubt that, as acknowledged agent of a defendant corporation, he enjoyed all the privileges of an actual party. This Court held that a master, not an attorney, had a right to appear for his slave, and insisted that what a plaintiff had sworn in reference to the slave was false, and that an action could not be maintained against him for slander in charging that the testimony was false. *State* v. *Leigh*, 3 Dev.* & Bat., 127.

In *Shelfer* v. *Gooding, supra*, Judge BATTLE states the principle deduced from an examination of the whole line of authorities as follows: "However it may be held with respect to the responsibility of *counsel*, or *a party*, uttering words against the character of a witness, or the opposite party, in the course of a trial, not relevant to the cause, we think that we have shown, by abundant authority, that *a counsel, or party. is entirely protected against an* action for slander for *whatever he may choose to say relevant or pertinent, to the matter before the Court, and that no inquiries into his motives will be permitte l.*" See, also, Bigelow on Torts., 161.

Mr Townsend (in his work on "Slander and Libel," § 224) says: "A party in a proceeding in a Court of Justice, may ordinarily conduct the prosecution or defence *in person, or by counsel, or attorney;* in either case, whatever a party may reasonably believe necessary to successfully maintain his suit, or his defence, he may speak. in the course of the proceedings, without being subject to an action for slander."

We fail to find any authority for limiting the privilege of a party to those cases in which he conducts the trial on his own behalf. Therefore, we must look to the reasons for first shielding parties and counsel from liability in order to determine whether a party present, but represented also by counsel, should enjoy the benefit of the rule, because his situation brings him within the reason for establishing it. As we have seen, this Court, in *Briggs* v. *Byrd*, extends the

protection to every one, placed by a legal proceeding or otherwise in such relation, personal or official, to a cause as to make it a duty to say something defamatory of a party or witness. Bigelow on Torts, 162. The defendant was, as is admitted, the general manager as well as the agent of the Genesee Gold Mining Company, and was, at present, advising the counsel of the company in the trial before the referee, and when the plaintiff Nissen testified that Cramer wished him (Nissen) to give him (Cramer) $500 for award-ing Nissen a certain contract, then it was that Cramer, in an audible tone, uttered the words charged. If the testi-mony of Nissen was material (and the defence that it was irrelevant was not, as it seems, insisted on), then the appar-ent motive of Cramer was to protect the company he rep-resented by contradicting it, and he is no more liable to answer in damages in this action than one of his counsel would have been had he uttered the words imputed to Cramer at that time. Though the Courts, as a rule, refuse to hear parties on their own behalf when they are repre-sented by counsel, any Court has a right, in the exercise of a sound discretion, to do so. As in the case of *Badgely* v. *Hidges*, the defendant doubtless merited censure for using such language from the learned jurist who was acting as referee, but if he permitted both the counsel and the man-ager, who was, for the purpose of the trial, the company, to speak, it is not the province of this Court to say that the party permitted, or not prevented, or punished for speaking on his own behalf, shall not be protected, at least against any presumption of intentional or malicious slander in the use of the pertinent words spoken.

The best considered opinions of the highest Courts in this country concur in according to parties and their counsel this absolute privilege of total immunity from liability for words pertinent to the issue and spoken in the course of a judicial investigation, or trial, in part at least, because of

the excitement naturally incident to the proceedings, and the supposed power of the presiding officer to restrain abuse, as well as for the important purpose of leaving counsel free and unfettered in discharging their duty to clients. Judge COOLEY (in his work on Torts, p. 212) cites with approval the language of Chief Justice SHAW on this subject, which is as follows: " We take the rule to be well settled by the authorities, that words spoken in the course of judicial proceedings, though they are such as impute crime to another, and therefore if spoken elsewhere would import malice and be actionable themselves, are not actionable if they are applicable and pertinent to the subject of the inquiry. And in determining what is pertinent, much latitude must be allowed to the judgment and discretion of those who are intrusted with the conduct of a cause in Court *and a much larger allowance made for the ardent and excited feelings with which a party, or counsel, who naturally and almost necessarily, with his client, becomes animated by constantly regarding one side only of an interesting and animated controversy, in which the dearest rights of such party may become involved.* And if these feelings sometimes manifest themselves in invective and exaggerated expressions, beyond what the occasion would strictly justify, it is to be recollected that *this is said to a Judge who hears both sides.* * * * Still, this privilege must be restrained by some limit, and we consider that limit to be this, that a *party or counsel* shall not avail himself of his situation to gratify private malice by uttering slanderous expressions, either against a party, witness, or third party, which have no relation to the cause or subject-matter of the inquiry." *Hoar* v. *Hood,* 3 Met., 193; *Lawson* v. *Hicks, supra.* The same reason exists for making some allowance for the excitement incident to the occasion, whether defendant Cramer was appearing in proper person or by attorney for the corporation, especially when we consider that the answer of the witness Nissen contained a

charge (in making which he was protected by absolute privilege from an action) that this defendant Cramer had attempted dishonestly to provide a bonus for himself while acting as the agent of another.

His Honor instructed the jury as follows:

"The plaintiff alleges in his complaint that the Genesee Gold Mining Company was present and represented by counsel and its agent, and admits that the agent present was the defendant Cramer. If the defendant was representing the Genesee Gold Mining Company in the plaintiff's action against it, he had the right to contradict what the plaintiff swore and to say it was a lie, and would not be liable to an action of slander unless he took advantage of and used the occasion to speak the words maliciously; but the plaintiff must prove that the defendant spoke the words maliciously, and such proof must show malice at the time the words were spoken, and that, under the circumstances surrounding their utterance, the law would not presume malice from the use of the words themselves."

If, as we believe, the defendant company, or its agent, when permitted by the Court to speak in the course of a trial or judicial proceeding, was protected, as the counsel would have been, against all inquiries into his motives in uttering any words that were relevant and pertinent, however defamatory of a witness offered for the opposing party, there is certainly no ground for complaint on the part of the plaintiff when the Court allowed him the opportunity to show, if he could, that the language, which was pertinent, was in fact used to gratify malice which the defendant at the time entertained towards the plaintiff.

We think that there was no error in the refusal to admit the letter offered. It was not relevant as evidence of the utterance of the defamatory language alleged to have been used, nor admissible as tending to show malice.

Affirmed.